HARRY CLAIR *vs.* MAX COLMES & others.

Suffolk.    March 13, 1923. — May 25, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, CROSBY, & PIERCE, JJ.

*Equity Jurisdiction*, To reach and apply assets not attachable at law.    *Bankruptcy*, Discharge.    *Equity Pleading and Practice*, Bill.

The allegations of a bill in equity against three, alleged to be copartners, were
that an agreement was made by the first defendant with the plaintiff, at
the request of the first defendant, that such defendant should receive from
the plaintiff in Boston jewelry worth $4,020, the title to remain in the
plaintiff, and that such defendant was to sell it at an auction in a distant
city and account to the plaintiff with a ten per cent profit; that, after that
defendant's return from the auction, he told the plaintiff that such of the
jewelry as was unsold had been stolen from him; that such statement was
false, and that that defendant had misappropriated the jewelry.    There
were allegations that the articles of jewelry had been intrusted to that de-
fendant " in a fiduciary capacity for the sole purpose of caring for them and
to be returned to " the plaintiff, and that that defendant had " fraudulently
retained, misappropriated and converted them while in a fiduciary capac-
ity."    There were also allegations that that defendant had been adjudi-
cated a bankrupt since the misappropriation but " that the discharge does
not relieve him from his obligation for the difference between the value of
the said . . . jewelry, and the proportionate dividend which the plaintiff
received from the said bankruptcy proceedings, and that " that defendant
was " still indebted to " the plaintiff " in the sum of $2,912.85 for said mis-
appropriation of the said . . . jewelry in a fiduciary capacity, in accordance
with " the bankruptcy act.    There were appropriate allegations as to the
partnership of the defendants.    Prayers were that the first defendant be
ordered to return the jewelry to the plaintiff and that execution issue there-
for, and that that defendant's interest in the partnership " be reached and
applied in payment of the plaintiff's claim."    On demurrer to the bill,
it was *held*, that

(1) Although one of the prayers served to indicate that the plaintiff
sought equitable replevin under G. L. c. 214, § 3, cl. 1, the general frame of
the bill was a statement of a claim in contract against the first defendant
for satisfaction of which the plaintiff sought under cl. 7 to reach and apply
that defendant's interest in the partnership;

(2) The specific statement in the declaration that the defendant " is still
indebted to " the plaintiff " in the sum of $2,912.85 " must be taken as true
for the purpose of the demurrer;

(3) Although the allegations of the bill were uncertain and confusing,
it could not be said that the bill as a whole failed to show any ground for
equitable relief;

(4) While the discharge in bankruptcy was not prevented from operation to bar the plaintiff's claim by reason of § 17a (4) of the national bankruptcy act as amended, such discharge would be prevented, by reason of §17a (2), from operating as to the claim set out in the bill of equity.

BILL IN EQUITY, filed in the Superior Court on March 30, 1922, against " Max Colmes, Isadore Colmes and Charles Ettleman, copartners, doing business under the names and styles of Boston Sales Company and Isadore Colmes."

The allegations of the bill were in substance that " on or about October, 1920," the defendant Max Colmes requested the plaintiff, a jewelry merchant and auctioneer, to assist him in the conduct of an auction sale of jewelry at Rutland, in the State of Vermont, and agreed with the plaintiff " to deposit certain diamonds and jewelry which were the property of " the plaintiff " and valued at approximately $4,020;" that in accordance with that arrangement, the plaintiff entrusted to the defendant Max Colmes such diamonds and jewelry upon the understanding that any of such diamonds and jewelry were to be sold and accounted for to the plaintiff with a ten per cent profit, the surplus thereafter to be paid to the defendant Max Colmes, and that the title to the diamonds and jewelry was to remain in the plaintiff; that the plaintiff obtained permission from the defendant Max Colmes to store the diamonds and jewelry in the safe of Max Colmes, which the plaintiff did, in a steel box which was his own property and which was locked by the plaintiff and deposited in the safe of the defendant Max Colmes, and that a memorandum of any sales made thereof was made daily; that, shortly thereafter and on the return from Rutland to Boston, the plaintiff " requested and demanded that his diamonds and jewelry be delivered to him, and upon arrival at the North Station, Boston, aforesaid, and upon demand," the defendant Max Colmes assured him that he would take care of them over night and return them in the morning and account for the sales in accordance with the aforesaid agreement; that on the following day the defendant Max Colmes alleged that he had been robbed of the diamonds and jewelry.

Further allegations of the bill were " that said diamonds

and jewelry were entrusted to the defendant Max Colmes in a fiduciary capacity for the sole purpose of caring for them and to be returned to the plaintiff;" and, on information and belief, that the defendant Max Colmes " was not in fact robbed of the said diamonds and jewelry, but has fraudulently retained, misappropriated and converted them while in a fiduciary capacity; " that the defendant Max Colmes " was adjudicated a bankrupt subsequent to the said misappropriation and specifically avers that the discharge does not relieve him from his obligation for the difference between the value of the said diamonds and jewelry and the proportionate dividend which the plaintiff received from the said bankruptcy proceedings, and that the defendant Max Colmes is still indebted to him in the sum of $2,912.85 for said misappropriation of the said diamonds and jewelry in a fiduciary capacity, in accordance with the provisions of the bankruptcy act of 1898 and amendments thereto."

Allegations in the bill as to the other defendants were in substance that Max Colmes at the time of the filing of the bill was doing business as a copartner with them " and that therefore, a valid attachment in a suit at law cannot be made of the property of the " defendant Max Colmes.

The prayers of the bill were (1) that an injunction *pendente lite* be issued enjoining the defendant Max Colmes or his co-partners, from withdrawing or disposing of any portion of his share or interest in the partnership; (2) that the defendant Max Colmes be ordered to return to the plaintiff the diamonds and jewelry, and that execution shall issue therefor; (3) that the interest of the defendant Max Colmes in the partnership might be reached and applied in payment of the plaintiff's claim, and (4) for general relief.

The defendants demurred on the ground, among others, " 2. That no ground of equitable relief is shown by the bill of complaint against the respondent or any of them."

The demurrer was heard by *Hammond,* J., who ordered that it be sustained upon the ground above set out, and, by order of *Wait,* J., a final decree was entered dismissing the bill. The plaintiff appealed.

*J. W. Tushins,* (*D. Stahl* with him,) for the plaintiff.

*J. P. Sylvia, Jr.,* for the defendants.

DeCourcy, J.    The bill in equity alleges, in substance, that in the course of certain transactions the plaintiff entrusted to the defendant, Max Colmes (hereinafter called the defendant), certain diamonds and jewelry, valued at approximately $4,020, the title of which was to remain in the plaintiff; that they were to be sold in Rutland, Vermont, and accounted for to the plaintiff with a ten per cent profit; that after the sale the plaintiff at Boston demanded the return of his merchandise, but the defendant reported that he had been robbed of said property.    The bill also avers " that said diamonds and jewelry were entrusted to the respondent Max Colmes in a fiduciary capacity for the sole purpose of caring for them and to be returned to your complainant; " that said Colmes was not in fact robbed, " but has fraudulently retained, misappropriated and converted them while in a fiduciary capacity."    It further alleges that subsequently the defendant was adjudicated a bankrupt, that the plaintiff received a proportionate dividend in the bankruptcy proceedings, and that said Colmes is a member of a copartnership with the other defendants.    The defendants filed a demurrer.    It was sustained on the ground that no cause for equitable relief was shown by the bill.

An examination of the bill does not clearly disclose on what ground for equitable relief the plaintiff relies.    The prayer for an order compelling the defendant to return the goods indicates that the plaintiff is seeking an equitable replevin under G. L. c. 214, § 3, cl. 1.    But the general frame of the bill is one to reach and apply the defendant's interest in a partnership, under § 3, cl. 7.    The specific statement that the defendant " is still indebted to him in the sum of $2,912.85 " must be taken as true, for the purpose of the demurrer.    Although the allegations are uncertain and confusing we are not prepared to say that the bill as a whole fails to show any ground for equitable relief.    See *H. G. Kilbourne Co.* v. *Standard Stamp Affixer Co.* 216 Mass. 118. *Mathieu* v. *Goldberg,* 19 Am. Bankr. Rep. 191.

As to the effect of the defendant's bankruptcy: Under § 17a of the bankruptcy act " A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as . . . (2) are judgments . . . for willful and malicious injuries to the person or property of another; . . . or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." As to (4) it has long been settled that the term " fiduciary capacity " relates to technical or express trusts, and does not include trusts implied by law from contracts of agency or bailment. *Woodward* v. *Towne,* 127 Mass. 41. *Chapman* v. *Forsyth,* 2 How. 202. *Noble* v. *Hammond,* 129 U. S. 65. *Upshur* v. *Briscoe,* 138 U. S. 365. Further, the language of the act apparently applies only to debts created by a person who was already a fiduciary, independently of the particular transaction out of which the debt arose. *Cronan* v. *Cotting,* 104 Mass. 245. *Crawford* v. *Burke,* 195 U. S. 176. See cases cited in note 42 L. R. A. (N. S.) 1094. 1 Collier on Bankruptcy (4th ed.) 447. The allegations of the bill do not bring the defendant within this exception. The statement that he retained the property " while in a fiduciary capacity " is a mere conclusion of law and not an averment of fact.

The liabilities for " willful and malicious injuries," which are excepted from the operation of a discharge in bankruptcy under said § 17a (2) relate generally to torts and not to breaches of contract. See *McChristal* v. *Clisbee,* 190 Mass. 120; *Bond* v. *Milliken,* 134 Iowa, 447; 3 Ann. Cas. 169 note. However, it was held in *McIntyre* v. *Kavanaugh,* 242 U. S. 138, that a broker who sells and appropriates the proceeds of corporate stocks in excess of the debt secured thereby, without the knowledge or consent of their owner is guilty of a wilful and malicious injury to property within the meaning of said cl. 2 of § 17: and that his liability is not released by a discharge in bankruptcy. On the authority of that case it was decided in *Baker* v. *Bryant Fertilizer Co.* 271 Fed. Rep. 473, that one who misappropriated the proceeds of collections obtained in selling goods furnished to him under an agreement that the goods and their pro-

ceeds were to be the property of the plaintiff, was not released by a discharge in bankruptcy. See also *In re Arnao,* 210 Fed. Rep. 395; *In re Keeler,* 243 Fed. Rep. 770. Assuming the allegations of the present bill to be true, as we must for the purposes of the demurrer, under the controlling construction given to this section of the bankruptcy act by the federal courts, the defendant's discharge in bankruptcy would not release him from his liability for the alleged fraudulent misappropriation and conversion of the plaintiff's property. And we cannot say as matter of law on this record that the plaintiff waived his legal rights in this suit by proving his claims against the bankrupt estate. *In re Menzin,* 238 Fed. Rep. 773. *Brown* v. *Hannagan,* 210 Mass. 246. It follows that the decree sustaining the demurrer and dismissing the bill must be reversed.

*Ordered accordingly.*