ARMOUR FERTILIZER WORKS *v.* VILLINES.

4-4627

Opinion delivered May 3, 1937.

*John K. Butt* and *E. F. McFaddin,* for appellant.
*Festus O. Butt,* for appellee.

HUMPHREYS, J. This suit was commenced in the chancery court of Carroll county, Eastern District, by appellant against appellee to recover $524.26, alleging that although appellee filed a voluntary petition in bankruptcy in the federal court and listed appellant as a creditor and received a discharge in bankruptcy on September 20, 1933, yet the claim was not discharged in bankruptcy because the claim was for a trust fund held by appellee in a fiduciary capacity for appellant and, if not, that the failure to pay said claim constituted a wilful and malicious injury to appellant's property by appellee.

As a basis for the claim appellant alleged that on the 12th day of March, 1929, it entered into a written contract with appellee by which appellee undertook to act as its agent to sell fertilizer for it either for cash or for notes, and to remit the cash to it and deliver to it all the notes given by customers for fertilizer, and to execute to it a guaranty note for payment of all fertilizer consigned to appellee by appellant not settled for in cash at the time of the execution and delivery of the customer's notes, and that all fertilizer consigned by it to appellee, and the cash, notes and accounts, and the proceeds thereof resulting from the sales of said fertilizer should at all times be and remain the property of appellant, and that all cash received by appellee on cash sales or from collections should be kept by appellee separate and distinct and promptly remitted to appellant.

Appellant also alleged that appellee failed to remit all collections to it as evidenced by an audit of the transactions between them covering a period of years, the correctness of which audit appellee acknowledged in writing of date April 10, 1933.

Appellee filed a motion to transfer the case to the circuit court which was granted on January 27, 1936.

Appellee then filed an answer admitting the execution of the contract, and that he failed to remit $524.26 which he collected for fertilizer sold as disclosed by the audit, and as a defense pleaded that in June, 1933, he filed a voluntary petition in bankruptcy in the federal court and listed appellant as a creditor; and that on September 20, 1933, appellee received his discharge in bankruptcy which relieved him from the payment of appellant's claim.

The case was then tried in the circuit court with the result that the complaint was dismissed over appellant's objection and exception, from which is this appeal.

The record reflects, without dispute, that no relationship whatever existed between appellant and appellee at the time the written contract was entered into between them; that the relationship, one to the other, grows out of the contract and their acts and conduct in carrying out said contract. There is little or no dispute in the record regarding the manner in which they conducted the business pursuant to or under the contract. Appellee was engaged in the canning business at Green Forrest, Arkansas, principally the canning of tomatoes, and furnished fertilizer to the growers of tomatoes on open account which they used in enriching the ground planted to tomatoes. When the tomatoes were picked these farmers or growers took them to the canning factory where appellee received and canned the tomatoes, and deducted what they owed for the fertilizer which had been consigned to him by appellant and paid them the balance in cash. When there was a market for canned goods appellee would sell all or a part of his pack, and deposit the price he received for them in the bank to the credit of the Villines Canning Company. At such time or times as the bank account would warrant, he would send a check signed by the Villines Canning Company to appellant and receive a credit for the amount remitted. This course of dealing between them continued from the date of the contract in 1929 until they ceased to do business in 1933. After the fertilizer was consigned to appellee it was sold by appellee to the growers on open account. He

never complied with the contract by taking notes from the purchasers for the fertilizer in the name of appellant. No notes were ever sent to appellee by appellant for collection; in fact, the balance due appellant when the tomato season closed was carried over to the next season in the form of an open account against appellee. The fertilizer was sold and used in planting the crops of the customers, and became a part of the soil of the growers, so it was impossible for the ownership of the fertilizer to remain in appellant as provided in the written contract. No complaint was made by appellant as to the manner in which the contract was carried out until an audit was made, and it was ascertained that appellee had collected $524.26 more for fertilizer than he had remitted to appellant in the course of their dealings, then an acknowledgment was taken from him that he had done so. The correspondence between them very clearly indicated that after the contract was executed no attention was paid to it, but that in the course of their dealings they treated themselves as creditor and debtor. If appellee got behind with appellant he made partial payments which were satisfactory to appellant, and appellant continued to ship fertilizer to him. No complaint was made on account of appellee's failure to take notes from the growers or his failure to send in a complete list of the growers to whom he had sold fertilizer. No complaint was made because appellee collected for fertilizer in tomatoes, and when canned and the packs sold that the money received was deposited in the bank in the name or in the account of the Villines Canning Company. Appellant knew and acquiesced in the manner in which the funds were handled. Appellant accepted checks on the account drawn on the fund of the Villines Canning Company and never insisted that all moneys collected for fertilizer be kept in a separate fund.

Section 17 of the Bankruptcy Act (30 U. S. Stat. L. 550) provides:

"All provable debts are discharged by bankruptcy except 1. Taxes; 2. Liability for false pretenses, or wilful and malicious injury to person or property of an-

other; 3. Debts not scheduled; 4. Debts created by fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity; 5. Wages; and 6. Funds of an employee in custody of bankrupt.''

There is no evidence in the record showing or tending to show that appellee was occupying a definite legal relation to appellant, either as officer or a fiduciary at the time the contract was entered into so the claim or debt was not within the fourth exception of § 17 of said bankruptcy act set out above. The rule supported by the great weight of authority is that, to bring the debt within the exception, a fiduciary relationship must have existed previously to or independently of the transactions from which the debt arises. *Henneqin* v. *Clews,* 111 U. S. 676, 4 S. Ct. 576, 28 L. Ed. 565; *Claire* v. *Holmes,* 245 Mass. 281, 139 N. E. 519. Many other cases are to the same effect; but as these cases announce the general rule we deem it unnecessary to refer to other cases.

As the evidence wholly fails to show that a trust or fiduciary relationship existed between the parties, equity had no jurisdiction to try the cause, and the chancery court correctly transferred the case to the circuit court to try out the issue of whether appellee wilfully and maliciously injured the property of appellant. This was an issue triable at law. If appellee did that in the course of their transactions, then, appellant's claim was not excepted from appellee's discharge in bankruptcy under the second clause of § 17 of said bankruptcy act. Of course, if appellee deprived appellant of his property by deliberately disposing of it without semblance of authority, it would be an injury thereto under the second clause of said bankruptcy act. Considering the fact that both parties had practically abandoned the written contract in the course of their dealings, and that the funds collected were handled in such a way that appellant became a creditor and appellee its debtor, the acts of appellee could not be characterized as an embezzlement of the funds. There was no wilful and malicious element on the part of appellee that characterized his acts as immoral nor a conversion by him of the funds to his own private

use. He did not use the money for speculative purposes or in making questionable investments, but used it in the course of a legitimate business and in a manner not disapproved by appellant, but rather approved by it, and because the business failed, it can not be said that he wilfully and maliciously converted appellant's money to his own use. We think under the evidence, practically undisputed, the debt arose out of legitimate transactions between the parties and that the relationship of creditor and debtor existed between them. That being the case, appellee's discharge in bankruptcy released him from the payment of the debt.

No error appearing, the judgment is affirmed.