34857. HUFF, Executrix, *v.* PORTER.

Decided December 2, 1953.

*O. J. Tolnas,* for plaintiff in error.

*Abit Nix, Vane G. Hawkins,* contra.

SUTTON, C. J.  "A prima facie defense to a suit against a bankrupt on a debt existing at the time of filing the petition in bankruptcy is made out by the introduction in evidence of the order of discharge in bankruptcy, the burden being then cast upon the plaintiff to show that because of the nature of the claim, failure to give notice, or other statutory reason, the debt sued upon was by law excepted from the operation of the discharge.  Kreitlein *v.* Ferger, 238 U. S. 21 (1) (35 S. Ct. 685, 59 L. ed. 1184, 1186)."  *Bell* v. *Georgia Chemical Works,* 33 *Ga. App.* 286 (125 S. E. 871); *Coppedge* v. *Aycock Mortgage & Bond Corp.,* 51 *Ga. App.* 248 (179 S. E. 909); *Tyler* v. *Jones County Bank,* 78 *Ga. App.* 741 (52 S. E. 2d 547).  The plaintiff contends that the debt as evidenced by the dormant judgment sued on was not affected by the defendant's discharge in bankruptcy, under a provision of the Bankruptcy Act, 11 U. S. C. A. § 35 (a) (2), which is as follows: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities . . . for willful and malicious injuries to the person or property of another. . ."

In McIntyre *v.* Kavanaugh, 242 U. S. 138 (37 Sup. Ct. 38, 61 L. ed. 205, 38 Am. Bankr. Rep. 165), it was held that the unauthorized sale by brokers of stock certificates held by them as collateral, and the appropriation of the avails to their own use without the knowledge of the owner, was a wilful and malicious injury to property within the meaning of the above-quoted provision of the Bankruptcy Act.  The court quoted with approval from Tinker *v.* Colwell, 193 U. S. 473, 487 (24 Sup. Ct. 505, 48 L. ed. 754) as follows: "A wilful disregard of what one knows to be his duty, an act which is against good morals,

and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception." In Davis v. Aetna Acceptance Co., 293 U. S. 328, 332 (55 Sup. Ct. 151, 79 L. ed. 393, 397), in which there was a finding of fact made in the lower court that the defendant was not "actuated by wilful, malicious or criminal intent in disposing of the [mortgaged] car in question," the ruling of the McIntyre case was somewhat limited by the following statement: "But a wilful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice. [Citations.] There may be an honest, but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a wilful and malicious one. Turning to the findings here, we see that wilfulness and malice have been unmistakably excluded." And in Mason v. Sault, 93 Vt. 412 (108 Atl. 267, 18 A. L. R. 1426, 44 Am. Bankr. Rep. 504), it was stated that the rule fairly deducible from the McIntyre case is "that the disposal of another's property without his knowledge or consent, done intentionally in disregard of what one knows to be his duty, to the other's injury, is a wilful and malicious injury to property within the meaning of the Bankruptcy Act," and it was further stated: "It may properly be noticed in passing that a conversion of property may be committed in such circumstances as to be barred by a discharge in bankruptcy. But a simple conversion and a conversion which shows design or willingness to inflict a wrong upon another, or the reckless disregard of the other's rights, are entirely different in character."

In *Covington* v. *Rosenbusch*, 148 *Ga.* 459 (97 S. E. 78, 42 Am. Bankr. Rep. 400), it was held that the collection of salary due after assignment thereof was a wilful and malicious injury to the property of the assignee within the meaning of the bankruptcy act, as a disposition of property without the authority of its owner. Also see *Citizens Bank* v. *Mullis*, 161 *Ga.* 371 (131 S. E. 44); *Hammond* v. *King*, 53 *Ga. App.* 877 (187 S. E. 413); *Shabaz* v. *Henn*, 48 *Ga. App.* 441 (173 S. E. 249). The cases of *White* v. *Morris Fertilizer Co.*, 31 *Ga. App.* 710 (121 S. E. 704,

4 Am. Bankr. Rep. (N. S.) 787), cited by the defendant in error as controlling, and *Walker Bros. Co.* v. *Capital City Grocery Co.,* 28 *Ga. App.* 531 (112 S. E. 157, 48 Am. Bankr. Rep. 424), which was cited as authority for the ruling in the *White* case, supra, seem to be instances of conversion without aggravating circumstances, and in such respect follow the principle of Davis *v.* Aetna Acceptance Co., 293 U. S. 328, supra. But the authority of the *Walker Bros.* case was questioned in *Hammond* v. *King,* 53 *Ga. App.* 877, supra.

In the present case, the plaintiff relied upon the record of the 1924 suit to show the character of the liability on which the judgment sued on was based, and contends that the liability was in trover for a wilful conversion, for which a money judgment was rendered. The defendant contends that the action was for damages arising ex contractu, under a form of transaction known as selling cotton on call.

· The petition filed in 1924 alleged: that the plaintiff had placed 12 bales of cotton weighing 6,560 pounds in the custody of the defendant cotton merchants in 1919, and had then borrowed $715.10 from the defendants upon this cotton; that the plaintiff demanded in June, 1920, that the cotton be sold for his account at the then prevailing market price of 44 cents, but the defendants refused to do so; that prior to that time the defendants had sold said cotton without the plaintiff's consent and had received 46 cents per pound therefor; that, on September 16, 1922, the plaintiff demanded that the defendants show him the cotton, and the defendants represented that the cotton was still in their possession but would not exhibit it to the plaintiff; that, on September 30, 1922, the defendants admitted that said cotton had been sold, and represented to the plaintiff that it had been taken away from them by a foreclosure or lien sale and had been sold for from 14 to 17 cents per pound, and the defendants paid the plaintiff 25 cents per pound for said cotton, which the plaintiff accepted, relying upon the defendants' statement as to the price for which the cotton had been sold; that, by reason of such fraud, the statute of limitations did not run against the plaintiff until September 29, 1922; that, under the settlement of September 30, 1922, the defendants paid the plaintiff $633 after deducting the loan of $715.10 and storage charges, which were not proper because the cotton had been previously sold and such charges could

not have accrued; that the defendants received $3,017.60 for said cotton, from which is to be deducted the loan of $715.10 and the sum of $633 paid to the plaintiff on September 30, 1922, leaving due the amount sued for, $1,669.50; and that the plaintiff, immediately after discovering the fraud practiced upon him by the defendants, on July 29, 1924, tendered to the defendants the money received by him in the alleged settlement, which was refused.

The answer admits that the defendants received the number of bales as alleged, but it was alleged that the defendants received the cotton under a customary arrangement in which the defendants were to receive the cotton and ship it or sell it as they saw fit, while the plaintiff could require payment for the cotton at the market price whenever he saw fit to do so. It was further alleged in the answer that there were conversations between the parties in regard to calling the cotton in question, while the price of cotton fell to 12 cents per pound, but that the plaintiff waited until the price of cotton had reached 25 cents per pound before calling it, and that the defendants then paid 25 cents per pound for all of the plaintiff's cotton. The answer does not set out any dates for this transaction.

Although for an amount less than that sued for, the verdict and judgment were for the plaintiff, and it is presumed that such a judgment, unexcepted to, was sustained by sufficient evidence in support of the allegations of the petition. A significant fact is that the verdict was for $404.59 as interest to July 29, 1925, the date of the verdict and judgment, which was interest on the principal sum awarded by the verdict at the legal rate for five years and one month, or from July 1, 1920, when it was alleged by the plaintiff that interest began to run. This was more than four years prior to the filing of the suit; and the jury, under proper instructions, must have sustained the plaintiff's alleged reasons as to why his suit was not barred by the statute of limitations, although the facts alleged to show that the statute did not run were denied by the defendants. Likewise, the jury must have rejected the other contentions of the defendants which were inconsistent with the case alleged in the petition. The petition claimed that the cotton was not sold to the defendants but was to be sold by them for the plaintiff's account; the answer, to the contrary, alleges that the defendants received the cotton to dis-

pose of as they saw fit. The petition shows that the defendants sold the cotton unknown to and without the consent of the plaintiff, and refused to sell it for him when demanded to do so in June, 1920; the answer is silent as to what the defendants did with the cotton. The petition alleges a settlement at 25 cents per pound in 1922 upon the defendants' representations that the cotton had been sold at a foreclosure sale, while the defendants contended that this was when the plaintiff had called the price of the cotton to be paid. We think that the alleged circumstances of fraudulent concealment of the true nature of the transaction for a period of four years, and of the false representation that the cotton had been taken from the defendants by a foreclosure, are sufficient by way of aggravation to show that the defendants' interference with the rights of the plaintiff in his cotton was not an innocent, mistaken, or technical conversion only, but was a wilful and malicious injury to the plaintiff's property, and so was within the provision of the Bankruptcy Act that the liability for such a wrong is not released by a discharge in bankruptcy.

The court erred in sustaining the defendant's plea of discharge in bankruptcy, and in rendering judgment for the defendant.

*Judgment reversed. Felton and Quillian, JJ., concur.*