SALES FINANCE CORPORATION *vs.* EDWARD C. DIMOCK.

Suffolk.   November 6, 1959. — February 2, 1960.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Bankruptcy*, Discharge. *Trust Receipt. Fiduciary. Words,* "Fiduciary capacity."

A purchaser of merchandise, who in a trust receipt was designated as a "trustee" holding the merchandise for an "entruster" having a "security interest" therein and agreed not to sell or otherwise dispose of the merchandise "until after payment to the entruster" of a specified price therefor, and who subsequently sold the merchandise without paying the "entruster" therefor and used the proceeds of such sale for his own purposes, was not a "fiduciary" within § 17a (4) of the bankruptcy act, and a claim by the "entruster" against him for the original specified price was released by his discharge in bankruptcy.

CONTRACT.   Writ in the Municipal Court of the City of Boston dated April 11, 1958.

The action was heard by *Morrissey*, J.

*Herbert Abrams*, for the plaintiff.

*George A. Dean*, (*Julius Thannhauser* with him,) for the defendant.

WILKINS, C.J. This is an action of contract for merchandise sold and delivered under trust receipts. The declaration alleges that under the terms of the trust receipts the "defendant trustee" agreed not to sell until payment was made to the plaintiff, and that the trustee sold the property without paying the plaintiff. The question for consideration is whether the defendant's obligations have been released by his discharge in bankruptcy. The trial judge found for the plaintiff. The Appellate Division vacated that finding and ordered a finding to be entered for the defendant. The plaintiff appealed.

Section 17a of the bankruptcy act provides: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . (2) are liabilities . . . for willful and malicious injuries to the . . . property of another . . . or (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity . . . ." 11 U. S. C. (1952) § 35.

On August 13, 1957, the defendant executed a signature authorization making the plaintiff his attorney in fact (1) "to execute trust receipts, conditional sale contracts or other title retention instruments covering refrigerators, air conditioners," and other merchandise shipped to him by the Allied Appliance Co. and paid for by the Sales Finance Corporation; (2) "to execute promissory notes as evidence of the obligations" of the defendant to the plaintiff; and (3) to execute "any and all papers" deemed necessary to effectuate title retention as security for advances made by it.

On December 31, 1957, the defendant purchased nine items of merchandise, and on January 30, 1958, one item. The plaintiff signed promissory notes for $667.92 and $98.28, respectively, in the name of the defendant payable to the plaintiff. In the receipts the defendant was called "trustee" and the plaintiff "entruster," and the trustee acknowledged

receipt of the merchandise listed, "a security interest in which has passed to the entruster." In each receipt there was printed, "Trustee agrees that the above-described property is the property of the Sales Finance Corp. and trustee will hold same in trust for said entruster for the purpose of storage preliminary to sale, at the trustee's sole risk as to expense, loss or injury, the property to be returned to the entruster immediately upon demand. Trustee is to keep the property free from all claims of taxes, liens or encumbrances, and trustee further agrees not to sell, deliver, rent, loan, pledge, use, mortgage, or dispose of the property in any manner until after payment to the entruster of the minimum price set opposite each item of the property listed above and further evidenced by promissory note attached hereto, which note the trustee authorizes the entruster to detach."

On March 5, 1958, the defendant was adjudicated a bankrupt upon voluntary petition, at which time there was an unpaid balance of $541.71 on the first trust receipt and $98.28 on the second. The trial judge's finding for the plaintiff was in the sum of $638.77. The report of the trial judge contains the statement: "the defendant did not pay . . . the plaintiff for the merchandise prior to the sale thereof by the defendant, . . . the defendant co-mingled funds which he received from the sale of said merchandise with his own funds and used these funds for his own business . . . ."

The defendant filed requests for rulings. The first request was, "The plaintiff's cause of action is one that is dischargeable in bankruptcy." The judge's disposition was, "Denied — I find that the defendant wilfully and fraudulently misappropriated the funds entrusted to his custody." The second request, "The discharge in bankruptcy secured by the defendant is a complete bar to the plaintiff's recovery in this action," was denied. The fourth request was, "The defendant is not a 'fiduciary' within the purview of § 17a (4) of the Bankruptcy Act excepting from discharge, debts created by embezzlement or the like, while acting in a fiduciary capacity." The judge's action was, "Denied under

the circumstances in this case. I find a fiduciary relation-
ship existed between the plaintiff and the defendant." The
seventh request, which was denied, read, "The evidence is
insufficient to warrant the court in finding for the plain-
tiff."

There may be confusion in the report between subdi-
visions (2) and (4) of § 17a. Subdivision (2) covers injuries
which are both "wilful and malicious." Such liabilities
which are excepted from the operation of a discharge in
bankruptcy "relate generally to torts and not to breaches of
contract." *Clair* v. *Colmes*, 245 Mass. 281, 285. Thus, a
conversion which is merely wrongful and not wilful and ma-
licious is not excepted from the operation of a discharge.
*Massachusetts Bonding & Ins. Co.* v. *Lineberry*, 320 Mass.
510, 511–512. *Orrill* v. *District Court of Newton*, 324 Mass.
8, 9. The word "malicious" does not appear in the findings.
The words "wilful" or "wilfully" do not appear in subdi-
vision (4). We think it likely, however, that the finding
that "the defendant wilfully and fraudulently misappro-
priated the funds entrusted to his custody" was intended to
refer only to subdivision (4). So interpreted, the report
contains no findings as to subdivision (2).

The declaration seeks to recover not the proceeds of any
sales but the original agreed prices of the merchandise. The
statement in the report that there was a fiduciary relation-
ship between the parties, standing alone, is a conclusion of
law. *Clair* v. *Colmes*, 245 Mass. 281, 285. If intended as a
finding, it was not warranted by anything in the report,
which carries a statement that it "contains all the evidence
material to the question reported." The evidence discloses a
security transaction with respect to the merchandise. "As
to (4) it has long been settled that the term 'fiduciary ca-
pacity' relates to technical or express trusts, and does not
include trusts implied by law from contracts of agency or
bailment. . . . Further the language of the act apparently
applies only to debts created by a person who was already a
fiduciary, independently of the particular transaction out of
which the debt arose. *Cronan* v. *Cotting*, 104 Mass. 245.

*Crawford* v. *Burke,* 195 U. S. 176." *Clair* v. *Colmes, supra,* 285.

In *Davis* v. *Aetna Acceptance Co.* 293 U. S. 328, it was held that a trustee under a trust receipt did not act "in a fiduciary capacity" under subdivision (4). The court said at pages 333–334, through Mr. Justice Cardozo: "It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto. . . . The substance of the transaction is this, and nothing more, that the mortgagor, a debtor, has bound himself by covenant not to sell the mortgaged chattel without the mortgagee's approval. The resulting obligation is not turned into one arising from a trust because the parties to one of the documents have chosen to speak of it as a trust." The case at bar is not distinguishable by the fact that the debtor bound himself not to sell until he paid the creditor a minimum amount; nor because there may have been no previous course of dealings between the parties.

No question as to a cause of action arising from a conversion of the proceeds of any sales with wilfulness and malice as distinguished from a conversion of the merchandise is presented by the record. See *Davis* v. *Aetna Acceptance Co.* 293 U. S. 328, 334–335.

There was error in the denial of the defendant's requests.

*Order of Appellate Division affirmed.*