**KALVAR CORPORATION, Plaintiff-Respondent,**

v.

**Tommy James BURROW, Defendant-Appellant.**

**No. 25969.**

Missouri Court of Appeals, Kansas City District.

March 5, 1973.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 1973.

John R. Whitsitt, Beal, Jones & Whitsitt, Kansas City, for defendant-appellant.

Robert W. McKinley, Jr., James H. McLarney, Swanson, Midgley, Eager, Gangwere & Thurlo, Kansas City, for plaintiff-respondent.

Before SHANGLER, P. J., PRITCHARD and WASSERSTROM, JJ., and ROBERT RUSSELL, Special Judge.

WASSERSTROM, Judge.

From an adverse ruling on his motion to quash garnishment under a judgment entered against him in 1969, the judgment debtor appeals. The ground for the motion to quash was that collection of the judgment is barred by a discharge in bankruptcy granted to appellant on December 8, 1970. The determinative issue is whether the judgment creditor's claim is of a nature barred from discharge by § 17(a)(2) of the Bankruptcy Act.

The underlying facts are these. Appellant operated as a franchise distributor for S. O. Systems, a subsidiary of respondent, until June 30, 1966. The franchise agreement provided for S. O. Systems to furnish appellant with merchandise on consignment. Whenever appellant made a sale, he was to deposit the proceeds in a bank account maintained in the name of the consignor S. O. Systems. Then, after receipt of those funds, the consignor was to make payment to appellant of the commission due to him.

A dispute arose between the parties in the latter half of 1965 pertaining to commission due to appellant arising from certain sales to the Internal Revenue Service in Kansas City. S. O. Systems failed to render an accounting to appellant concerning those sales for a period extending from July, 1965 to January, 1966, and as a result appellant began withholding the proceeds from the sale of consigned goods. He took the position that "when you pay me, I will pay you".

Some correspondence and discussions occurred between the parties in January, 1966, with respect to this matter, but appellant continued to withhold sale proceeds. Thereafter, in April, 1966, respondent completed taking over all of the operations and assets of its subsidiary S. O. Systems, and as part of that acquisition the accounts receivable from appellant to S. O. Systems were assigned to the parent corporation.

Appellant terminated his franchise effective June 30, 1966. At that time he had accumulated over $4,000.00 in proceeds of consigned sales which he had withheld. In addition, an inventory taken at the conclusion of the franchise disclosed an inventory shortage of $2,617.22. A third item of claim against appellant consisted of $315.00 which had been advanced to him on April, 1, 1966, against estimated March commissions.

Respondent filed suit for all three elements of claim in the circuit court and received judgment in full. Thereafter, appellant filed a petition in bankruptcy listing respondent as a creditor, and the bankruptcy court issued its usual general order enjoining all State court proceedings. However, concurrently with the entry of the order of discharge in bankruptcy, the bankruptcy court modified its stay order so as to permit respondent to proceed in the State court to enforce its judgment. Execution and garnishment then followed in the court below.

Before addressing the substantive problem presented, we must consider sua

sponte a preliminary jurisdictional question. Appellant's notice of appeal states that the appeal is being taken "from the order entered in this action on the first day of October, 1971". The order of that date was the overruling of appellant's motion to quash. That order was not appealable. Household Finance Corp. v. Seigel-Robert Plating Co., Mo.App., 483 S.W.2d 415, is directly in point and holds that the overruling of a motion to quash garnishment cannot constitute a final judgment since "an examination of the garnishment statutes clearly shows that there are definite proceedings to be followed before the final judgment is entered".

However, the procedural situation in the present case is distinguishable from the Household Finance Corp. case. When this procedural problem was called to the attention of counsel at oral argument, both agreed that there had in fact been action in the trial court beyond merely the overruling of a motion to quash. With the permission of the court, the parties have filed stipulation showing the further procedural facts, including the payment of the garnishment proceeds into the registry of the court and the entry of an order by the trial court directing the payment of those proceeds to the respondent. In view of those circumstances, all of the procedural steps contemplated by the garnishment statutes have been complied with, and no purpose would be served by remanding these proceedings. The stipulation will be treated as a supplemental transcript.

■ This still leaves a defect in the notice of appeal, in that on its face it seeks to review a nonappealable order. This defect is, however, purely formal in nature, and we will treat the notice of appeal as though it had specified the order dated October 13, 1971, under which the trial court required the clerk to pay the garnishment proceeds to respondent. See World Franchisers, Inc. v. Birk, Mo.App., 456 S.W.2d 606.

We turn now to the sole point contained in appellant's Points and Authorities, which is that the court below erred in overruling the motion to quash because "defendant's indebtedness was discharged in bankruptcy". The resolution of this issue depends upon interpretation of § 17(a)(2) of the Bankruptcy Act, 11 U.S.C.A. § 35(a)(2), as it read on December 8, 1970, which was the date of appellant's discharge in bankruptcy. The statute at that time, which was prior to the effective date of the 1970 amendment, read as follows:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . are liabilities . . . for willful and malicious injuries to the . . . property of another . . ."

For our purposes, the principles controlling the construction of this provision are contained in the opinions of the United States Supreme Court in Tinker v. Colwell, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 and McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205. In the Tinker case the Court held that in order to come within this exception to a discharge in bankruptcy, it is not necessary that the creditor show that the bankrupt was actuated by personal malevolence. On the contrary, the court approved interpreting the term malice for this purpose as meaning "a wrongful act, done intentionally, without just cause or excuse". The Court further held:

"[W]e think a wilful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception."

The principle of the Tinker case was applied in the McIntyre case, which involved

a misappropriation by stock brokers to their own use of securities which had been left in their care by their customer. The Court specifically rejected an argument that the exception in question had never been intended to include conversion.

Applying these principles, there is a substantial line of cases holding that the sale of consigned property and the failure of the consignee to account for the proceeds to the consignor constitutes a willful and malicious injury to the property of the consignor and that the claim based upon that misappropriation is barred from discharge in bankruptcy. Baker v. Bryant Fertilizer Co., 4 Cir., 271 F. 473; In re Nordlight, D.C.N.Y., 3 F.Supp. 486; Smith v. Ladrie, 98 Vt. 429, 129 A. 302; Fruchter v. Martin, 350 Mich. 12, 85 N.W.2d 125; Clair v. Colmes, 245 Mass. 281, 139 N. E. 519.

Appellant cites as his sole authority to the contrary Collier on Bankruptcy, 1A, § 17.17, p. 1654. That work does contain in a footnote language contrary to the holdings of the cases cited above. However, that language is intended only as a summary of the holding of a Georgia Court of Appeals in White v. Morris Fertilizer Co., 31 Ga.App. 710, 121 S.E. 704. The White case was decided by a two to one vote and over the strong dissent of Jenkins, P. J. Furthermore, there is doubt as to continuing validity of the White decision, even in the jurisdiction in which it was decided. Huff v. Porter, 89 Ga.App. 345, 79 S.E.2d 334. In any event, the White decision is contrary to the weight of authority.

■■■ Appellant seeks to escape the force of the foregoing rule by an effort to justify his retention of the proceeds of consigned sales on the ground that this was merely a tactic to force respondent to account to him for commissions due on sales to the Internal Revenue Service. It is true that not every conversion is to be deemed willful and malicious, and in appropriate circumstances, an innocent or merely technical conversion will not be

barred from discharge by bankruptcy. Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393. However, a consideration of the facts here fails to convince of appellant's innocence within the meaning of the Davis and like cases. In the first place, appellant himself admits that the franchise agreement called upon him to deposit all proceeds of consignment sales to an account in the name of the consignor, and that the obligation of the consignor to pay commissions to him did not arise until that deposit had first been made. Appellant admits that he did not follow that agreed procedure. His attitude that "when you pay me, I will pay you" stands in stark defiance to his legal obligation under the contract of which he was fully aware. This alone would make his withholding of the consignment funds "willful and malicious" within the meaning of § 17(a)(2). Moreover, it appears that the consignor did, after an unexplained delay of several months, render an accounting to appellant in January, 1966, but that appellant nevertheless continued thereafter the same practice of withholding sale proceeds. Respondent introduced testimony that appellant received all commissions due him. While the counterclaim for an accounting which had been filed by appellant in the original proceeding was dismissed without prejudice, there is no showing that it was refiled or listed as an asset in bankruptcy. The issue of appellant's innocence of willfulness and maliciousness must be considered to have been found against him in light of the provision in Rule 73.01(b), V.A.M.R., that "[a]ll fact issues upon which no specific findings are made shall be deemed found in accordance with the result reached".

Respondent also argues that his indebtedness to respondent must be deemed dischargeable because of the wording of § 17 that a discharge in bankruptcy releases a bankrupt from all of his provable debts "whether allowable in full or in part". For the purpose of making this argument, appellant stresses that respondent's claim

against him consisted of three parts; namely, the proceeds of sales withheld, the inventory shortage, and the small advance against commissions.[1] Upon the argument that the last two of these three items should be considered as dischargeable, appellant contends the entire judgment must be considered as dischargeable pursuant to the statutory phrase quoted.

■ Even assuming that one or both of the last two elements of claim would be separately dischargeable, it does not follow that the entire judgment must be dischargeable as a whole. Appellant concedes that he has no authority to support the argument under consideration. Moreover, the phrase "allowable in full or in part" modifies the phrase "provable debts". It does not limit the subsequent provision concerning "liabilities . . . for willful and malicious injuries".

■ Finally, appellant argues that he did not inflict any malicious or willful injury "to the property of Kalvar". In this connection, he undertakes to draw a sharp distinction between the cause of action against him by S. O. Systems as it existed prior to April, 1966, and that same cause of action in the hands of Kalvar after that date. No logical reason for such a distinction can be perceived. When the S. O. System claims were transferred by it to Kalvar, the cause of action retained the same quality insofar as dischargeability in bankruptcy is concerned. This result is particularly required in a situation where the assignment took place as part of a transaction in which a parent company took over the operations of its own subsidiary. .

The judgment is affirmed.

All concur.

1. Incidental to this portion of his argument, appellant asserts that the last two of those elements are clearly dischargeable, even though the first element may not be. However, he has not incorporated in his Points Relied Upon any contention that these two elements should be treated separately and as discharged,

thereby reducing to that extent the amount open for collection. Absent such specification, as required by Rule 84.04 (d), that possible argument will not be considered. Appellant has chosen to gamble on an all or nothing basis and that choice is his prerogative.