**In the Matter of Henry George ZODA fdba Hank's Meat Market, Bankrupt.**

**Sharon Zoda PETERS, Plaintiff,**

**v.**

**Henry George ZODA, Defendant.**

**Bankruptcy No. 79–45 T.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

Feb. 11, 1980.

Gary N. Strohauer, Cooper, Rives, Strohauer & Teevan, Clearwater, Fla., Peter N. Meros, St. Petersburg, Fla., for plaintiff.

Joanne F. Killeen, Gulf Port, Fla., for defendant.

David Gorman, St. Petersburg, Fla., trustee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION DETERMINING DISCHARGEABILITY

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS, hopefully, the last chapter of a long, ongoing battle between a bankrupt and his former wife; a battle which initially culminated in a final decree of divorce. In conjunction with the divorce, the parties entered into a property settlement agreement which was executed by the Plaintiff and the Defendant on May 19, 1970 and this is the document which is the basis of the present controversy presented to this Court by a complaint filed by Sharon Zoda Peters, the former wife of the Bankrupt.

The initial complaint contained two grounds. Count I set forth a claim of non-dischargeability which was based on the allegation that a certain judgment entered in favor of the Plaintiff and against the Bankrupt in the State Court for the amount of $2,775 represented a liability resulting from a willful, malicious tort, to wit: a willful, malicious injury to the property of another, therefore, according to the Plaintiff should be declared to be non-dischargeable by virtue of § 17a(8) of the Bankruptcy Act. In Count II, the Plaintiff sought an order denying the Bankrupt's discharge under § 14c by charging that the Bankrupt concealed numerous assets from the Court and that accordingly, he was not entitled to a discharge by virtue of 14c(4).

The initial complaint was challenged by the Defendant and this Court dismissed the complaint without prejudice. In due course, the Plaintiff filed an amended complaint which sets forth only a claim of non-dischargeability on two different theories. The first, as mentioned earlier, based on the claim that the judgment represents a liability resulting from willful, malicious injury to the property of another. The second represents a claim of non-dischargeability based on an alleged liability resulting from a conversion of the property of the Plaintiff by the Bankrupt. The evidence presented on these claims at the final evidentiary hearing reveals the following:

On January 19, 1970, Henry George Zoda, the Bankrupt involved in this proceeding entered into a property settlement agreement with the Plaintiff, Sharon Zoda Peters, his then wife, in connection with the then pending proceeding instituted to dissolve the marriage (Pl's Exh. # 1). The property settlement agreement provided inter alia that property which was then owned by them as tenants by the entireties and which consisted of four particular parcels described as Lots A, B, C and D, shall be distributed to the parties as follows: the Plaintiff was to receive the sole and complete ownership of Lot D; the Bankrupt was to receive the sole ownership of Lot B together with all improvements thereon and was to have a life estate in Lots A and C with a remainder to the Plaintiff. The agreement further provided that the Plaintiff shall have at all times, the exclusive right to use and enjoy Lots A and C as pasture land during the life estate of the Bankrupt. The Agreement further provided that all personal properties tangible or intangible, owned by the parties separately or by the entirety shall be the sole and exclusive properties of the Bankrupt with some exceptions not relevant to this controversy. To effectuate this Agreement, the parties executed a quit claim deed on June 18, 1970 whereby the Bankrupt and his then wife conveyed all rights, title and interest in Lots A and C to the Bankrupt, for life, and the remainder to the Plaintiff and her heirs.

It further appears that subsequent to the execution of the quit claim deed, there was a series of skirmishes between the parties from which there developed a heated, but good faith, dispute concerning the ownership of a chain link fence separating Lot A from Lot B and one separating Lot B from Lot C. Thus, in January of 1976, the Plaintiff filed a petition in the State Court for extraordinary relief and on January 25, 1973, obtained an order directing the Bankrupt to restore the chain link fence which he had removed and directing him to refrain from disturbing the status quo during the pendency of an appeal on the matter. On April 24, 1974, a mandate was entered by the appellate court. However, the question of the ownership of the fence was not resolved. It further appears that on February 15, 1976, the Bankrupt removed the chain link fence after having given notice to the Plaintiff of his intention to do so. The Plaintiff thereafter filed a motion for contempt in the State Court, a proceeding which resulted in the money judgment which is the subject of the instant controversy. Thereafter, the wife replaced the chain link fence with a barbed wire fence and in turn moved the gates which separated the properties, which prevented the Bankrupt, at least partly, from having access to Lot B owned by him exclusively.

The claim of non-dischargeability based on § 17a(2) and (8) which in pertinent part provides respectively as follows:

§ 17. *Debts Not Affected by a Discharge*

a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . (2) are liabilities . . . . for willful and malicious conversion of the property of another . . . . (8) are liabilities for willful and malicious injuries to the . . . . property of another . . . . .

In order to sustain a claim of non-dischargeability under either of these Sections, the Plaintiff must not only establish with the requisite degree of proof that the bankrupt, in fact, converted or injured the property of the Plaintiff but that the Bankrupt did it both willfully and maliciously. 1A *Collier on Bankruptcy*, § 17.17 (14th ed. 1978). Certainly not all injuries or conversions are willful and malicious thus rendering the debt non-dischargeable, and the presence of the elements of willfulness and malice must be determined by considering all the facts and circumstances. *Prudential Finance of N.O., La., Inc. v. Necaise*, 192 So.2d 868 (La.App.1966); *U. S. Fidelity & Guaranty Co. v. Tanna*, 279 F.Supp. 396 (D.C.Colo.1968); *Hunter v. Commercial Securities Co.*, 237 Miss. 41, 113 So.2d 127, 132 (1959); *Kalvar Corp. v. Burrow*, 493 S.W.2d 48 (Mo.App.1973).

Applying this standard to the facts in question, it is evident that the Plaintiff has failed to establish with the requisite degree of proof any willful and malicious intent on the part of the Bankrupt. Even assuming that the Bankrupt was guilty of conversion and he was guilty of injuring the property of another, which is by no way established by this record, it is clear that he acted in good faith and without malice. Therefore, the claim of non-dischargeability cannot be sustained on either of the theories advanced by the Plaintiff for the following reasons.

The property settlement is vague and unspecific as to the ownership of the fence as is the quit claim deed. Furthermore, the question of ownership of the fence was repeatedly litigated by the parties and has never been really resolved with finality. While it is true that the Bankrupt moved this fence earlier and was ordered to restore the same, an order which he complied with, it is without dispute that there was an ongoing controversy between the parties in the State Court with regard to the ownership of these particular fences. In light of this background, one would be hard pressed to conclude and find first, the absence of a bona fide dispute between the parties concerning the ownership of the fences and second, the willful, malicious intent which is required in order to sustain the claim of non-dischargeability on either of the theories advanced by the Plaintiff.

While one would be less than candid not to recognize that there is no love and affection left after the divorce between the parties and while the Defendant's spirit might have been fueled by his ill feelings toward his former wife while fighting for his clear right to the fence in question, this alone is insufficient to establish the malicious intent to injure the properties of another, although it might have been sufficient to establish an intent to inflict some mental distress on his former wife. Equally, his motivation to remove the fence has no relevancy or bearing on the charge of conversion simply because the ownership of the fence has never been really established with finality and his dominion and control over the fence was asserted by the Defendant in good faith even though he knew that the removal of the fence would anger and upset his former wife.

Considering the foregoing, this Court is satisfied that the Plaintiff failed to sustain the burden placed on her to establish an essential element of a claim of non-dischargeability and, therefore, she is not entitled to the relief sought.

A separate final judgment will be entered in accordance with the foregoing.